UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PERCY MARTIN ET AL.                                    CIVIL ACTION

VERSUS                                                 NO. 18-8262

AMERICAN MIDSTREAM                                     SECTION "R" (4)
PARTNERS, LP ET AL.

# ORDER AND REASONS

Before the Court is defendant P3 Global Personnel, LLC's motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] The Court grants the motion because plaintiffs' complaint does not allege facts that entitle them to relief.

## I.  BACKGROUND

Plaintiffs Percy and Linda Martin bring this action against Percy Martin's former employer for alleged workplace harassment. Percy Martin is a health, safety, and environmental consultant.[2] Defendant P3 Global Personnel, LLC, a provider of skilled and professional personnel, allegedly hired Martin to do contract work for defendant American Midstream, Partners, LP, on American Midstream's natural gas Main Pass 260

---

[1]   R. Doc. 17.
[2]   R. Doc. 1 at 2 ¶ 11.

Platform.³ According to plaintiffs, on February 7, 2017, Percy Martin was inspecting fire extinguishers on the platform when he entered a tool room and found a hangman's noose resting on the work table.⁴ Plaintiffs allege that the noose was placed in an open and obvious location so that he would see it upon entering the tool room.⁵

Upon seeing the noose, Percy Martin allegedly photographed its location and reported the incident to his supervisor, David Cooper.⁶ Cooper allegedly admitted to Martin that he had seen the noose and taken it apart, and that he was hoping that Martin had not seen it.⁷ Plaintiffs allege that defendants Global and American Midstream subsequently failed to investigate the incident or take remedial steps to assure Percy Martin of his safety.⁸

On August 30, 2018, plaintiffs filed a complaint alleging assault, intentional infliction of emotional distress, negligent infliction of emotional distress, a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, workplace harassment on the basis of sex and race under

---

3   *Id.*
4   *Id.* at 3 ¶ 12.
5   *Id.*
6   *Id.* ¶ 13.
7   *Id.*
8   *Id.* ¶¶ 14-18.

Title VII, and constructive discharge under Title VII.[9] Percy Martin seeks damages for emotional distress and lost wages and benefits.[10] Linda Martin seeks damages for emotional distress for her vicarious fear for her husband's life after the noose incident.[11]

Defendant p3 Global Personnel, LLC has filed a motion to dismiss plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim.[12] Plaintiffs oppose the motion.[13]

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "Courts may dismiss for lack of subject matter jurisdiction on any one of

---

[9] *See generally* R. Doc. 1.
[10] *Id.*
[11] *See id.* at 3 ¶ 20, 5 ¶ 31, 6 ¶ 42.
[12] R. Doc. 17.
[13] R. Doc. 23.

three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Furthermore, plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

### B. Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the party pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the nonmoving party. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *Iqbal*, 556 U.S. at 678. It need not contain detailed factual allegations, but it must go beyond labels, legal

4

conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the party's claim. *Lormand*, 565 F.3d at 257. The claim must be dismissed if there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## III. DISCUSSION

### A. Motion to Dismiss under Rule 12(b)(1)

Defendant argues first that plaintiffs' claims under Title VII must be dismissed because Percy Martin failed to exhaust his administrative remedies before filing this lawsuit.[14]

Before proceeding with a civil action under Title VII, a plaintiff must file a timely administrative charge with the EEOC. *See Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006). In Louisiana, a plaintiff has 300 days from the occurrence of the alleged discriminatory practice to file a charge with the EEOC. *See Conner v. La. Dep't of Health*

---

[14] R. Doc. 17-2 at 2-3.

*and Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) (citing La. R.S. 51:2231 *et seq.*); 42 U.S.C. § 2000e-5(e)(1). Once the EEOC issues a right-to-sue letter, a Title VII plaintiff must sue within 90 days of receiving the letter. 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).

Plaintiffs point to their right-to-sue letter from the EEOC as evidence of their compliance with all administrative requirements.[15] The right-to-sue letter indicates that plaintiffs filed this action within 90 days of receipt,[16] but it does not include an original filing date. Nor do plaintiffs provide the date on which they originally filed their claim with the EEOC. The Court therefore cannot conclusively determine whether plaintiffs timely filed their EEOC claim.[17] But, even assuming that plaintiffs have properly exhausted their administrative remedies, their claims still must be dismissed because they have failed to state a claim upon which relief can be granted.

---

[15] R. Doc. 20-3.
[16] *See id.* at 1 (showing that the right-to-sue letter was mailed on June 6, 2018, less than 90 days before plaintiffs filed this action).
[17] There is some indication that the claim was timely filed. Plaintiffs make a general allegation in the complaint that they complied with all exhaustion requirements, *see* R. Doc. 1 at 8 ¶ 11, and the right-to-sue letter includes an option for the EEOC to close the case because the charge was not timely filed, which the EEOC did not do for plaintiffs' charge.

## B. Federal Rule of Civil Procedure 12(b)(6)

### 1. *Hostile work environment*

Plaintiffs allege that Martin was subjected to unlawful harassment on the basis of his race.[18] For the reasons below, they have failed to state a claim under Title VII.

Title VII prohibits an employer from discriminating against any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. To state a claim for hostile work environment under Title VII, a plaintiff must allege that he: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

---

[18] The complaint makes a single reference to discrimination on the basis of sex. *See* R. Doc. 1 at 8 ¶ 54. But there are no factual allegations involving harassment on the basis of sex. The Court therefore finds that plaintiffs have failed to state a claim for a hostile work environment based on sex discrimination.

7

An employee has a cause of action under Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation omitted); *see also Mendoza v. Helicopter*, 548 F. App'x 127, 128-29 (5th Cir. 2013). This standard requires extreme conduct, and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted).

In evaluating hostile work environment claims, courts consider the totality of the circumstances, including "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (internal citation omitted). A plaintiff must subjectively perceive the environment to be abusive, and the work environment must be objectively hostile or abusive. *See Harris*, 510 U.S. at 21-22. The "mere utterance of an epithet which engenders offensive feelings

in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Id.* at 21 (internal citation and alterations omitted).

Plaintiff's factual allegations for his hostile work environment claim consist of his finding the alleged noose, reporting it to his supervisor, and the supervisor's failure to investigate the incident further. A noose is a longstanding and invidious symbol of violence toward African-Americans. *Williams v. N.Y.C. Hous. Auth.*, 154 F. Supp. 2d 820, 824 (S.D.N.Y. 2001) (explaining that the symbol of the noose is used to inspire fear in those at which it is directed) (quoting *Vance v. S. Bell Tel. & Tel. Co.*, 983 F.3d 1573, 1583 (11th Cir. 1993) (Fay, J., dissenting)). Display of a noose, even as a single incident, could potentially constitute the type of special circumstance that would create a hostile work environment. *Hudson v. Cleco Corp.*, 539 F. App'x 615, 620 (5th Cir. 2013) ("Under the proper circumstances, [displaying a noose] might constitute an extremely serious isolated event causing a discriminatory change in the terms and conditions of one's employment." (internal quotation marks omitted)).

But here, plaintiffs have not alleged facts that connect the alleged noose to a threatening intent or racial animus. Percy Martin merely saw the noose laying on a table, and then it was quickly dismantled. The situations in which federal courts have found that a noose in the workplace created a hostile

9

work environment were more threatening and harassing to the plaintiff than the facts alleged in this case. *See, e.g.*, *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) (plaintiff established a hostile work environment when there were multiple nooses on different occasions, a noose was displayed by his supervisor on a bulletin board visible to employees, and plaintiff was also subjected to verbal harassment and threats); *Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1139-40 (10th Cir. 2008) (reversing grant of summary judgment when plaintiff's co-workers hung a life-size noose at his workplace after graffitiing plaintiff's locker with racist cartoons, threatening him, and repeatedly expressing racist sentiments toward him). Plaintiffs do not allege that the noose was displayed or that Martin's coworkers commented on the noose, and Martin's supervisor quickly untied the rope as soon as he saw it. Plaintiffs do not allege any other incidents of harassment or race-based conduct.

Plaintiffs' single allegation that Percy Martin found a noose does not establish a hostile work environment by itself. "[D]istrict courts in the Fifth Circuit require more serious incidents for the display of a noose to amount to a hostile work environment." *Davis v. Ochsner Med. Ctr.*, No. 15-88, 2016 WL 1383638, at *4 (E.D. La. Apr. 7, 2016); *see also Jones v. Dallas County*, 47 F. Supp. 3d 469, 490 (N.D. Tex. 2014) ("The mere presence of a noose in

the workplace is insufficient of itself to establish a racially hostile work environment."); *Carter v. Luminant Power Servs. Co.*, No. 10-1486, 2011 WL 6090700, at *31 (N.D. Tex. Dec. 6, 2011) (holding that nooses in the workplace constitute race-based harassment, but plaintiff's discovery of a noose did not create a hostile work environment because plaintiff "viewed the noose only once, and it was not displayed in such a manner that was physically threatening to Plaintiff"); *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 861 (E.D. Tex. 2014) (holding that an "isolated incident" in which a noose was anonymously placed in plaintiff's belongings did not create a hostile work environment because it did not affect the terms and conditions of his employment), *aff'd*, 640 F. App'x 393 (5th Cir. 2016). Plaintiffs have therefore failed to allege facts that give rise to a hostile work environment claim against defendants.[19]

### 2. Constructive Discharge

Title VII proscribes an employer from discharging an employee "because of" his or her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In determining whether an employer's actions

---

[19] Count VI of plaintiffs' complaint is titled "Harassment." *See* R. Doc. 1 at 8 ¶ 54. Allegations of workplace harassment are included in a claim of hostile work environment under Title VII. The Court therefore includes Count VI in its analysis of plaintiffs' hostile work environment claim.

constitute a constructive discharge," courts consider "whether 'working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) (alterations omitted) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)). An employee may be constructively discharged in several ways, including by:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Aryain*, 534 F.3d at 481. Plaintiffs fail to allege any of these circumstances, or any other circumstance that would compel a reasonable person to resign. The complaint contains no allegation that defendants sought to fire plaintiff, took actions to reduce his responsibilities or pay after he reported the noose to his supervisor, or engaged in conduct calculated to encourage his resignation.

Further, the required showing for constructive discharge is more stringent than the showing for a hostile work environment claim. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 440 (5th Cir. 2005). The Court has already held that plaintiffs' allegations did not sufficiently state a hostile

work environment claim. Thus, their constructive discharge claim fails as a matter of law.

### 3. Assault

Under Louisiana law, "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36; *see also Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014) (defining assault as "the imminent threat of a battery" (citation omitted)). A battery, in turn, is defined as "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987); *see also* La. R.S. 14:33 (defining battery as "the intentional use of force or violence upon the person of another"). Thus, to state a claim for assault, a plaintiff must allege: "(1) the intent-to-scare mental element (general intent); (2) conduct by the defendant of the sort to arouse a reasonable apprehension of bodily harm; and (3) the resulting apprehension on the part of the victim." *State v. Blaise*, 504 So. 2d 1092, 1094 (La. App. 5 Cir. 1987).

Martin claims that the noose in the tool room constituted assault because it caused him a well-founded fear of imminent peril and fear for his life.[20] But Martin has not pleaded facts indicating that someone intentionally

---

[20]   R. Doc. 1 at 3 ¶ 19.

13

created the noose to scare him, much less facts that would indicate imminent harm. While the display of a noose may in some circumstances constitute a threat, here plaintiffs do not explain how they knew that the rope Percy Martin saw in the tool room was a noose intentionally created to threaten him, rather than a knotted rope that was being used for work on the platform.

Even if there were evidence that the noose had been purposefully created and left with the intention of threatening him, Percy Marin alleges no reason for him to have perceived that the threatened violence was imminent. The complaint does not allege that anyone else was present in the room when Martin found the noose,[21] or any other circumstance suggesting a threat of immediate bodily harm. *Groff v. Sw. Beverage Co., Inc.*, 997 So. 2d 782, 787 (La. App. 3 Cir. 2008) (affirming summary judgment on assault claim because, among other reasons, co-employee never made a verbal threat, "had no weapon," and "did not move toward [plaintiff] in a manner that would indicate a threat of imminent harmful or offensive contact"). Plaintiffs have therefore failed to state a claim for assault.

### 4. *Intentional infliction of emotional distress*

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and

---

[21] R. Doc. 1 at 3 ¶ 12.

outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress, or knew that such distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

The isolated incident in which Percy Martin found the noose, without other behavior, does not constitute extreme and outrageous behavior giving rise to a claim for intentional infliction of emotional distress. *See Coles v. Carilion Clinic*, 894 F. Supp. 2d 783, 786-87 (W.D. Va. 2012) (plaintiff alleging display of a noose and shackles in addition to racial slurs and references to the Ku Klux Klan failed to state an IIED claim under a similar Virginia statute because the behavior was not sufficiently outrageous and intolerable); *see also Singleton v. St. Charles Parish*, 833 So. 2d 486, 495

(La. App. 5 Cir. 2002) ("*White v. Monsanto* established a high threshold for evidence of intentional infliction of emotional distress.").

Further, even if the conduct was extreme and outrageous, the standard for stating a claim of IIED against an employer requires that a plaintiff show more than a single failure to investigate. "An employer's continued inaction" after receiving an employee's complaints of harassment "may give rise to a claim for intentional infliction of emotional distress." *Martin v. Bigner*, 665 So. 2d 709, 712 (La. App. 2 Cir. 1995). But "in a workplace setting," Louisiana courts have "limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000).

Plaintiffs have alleged a single incident of harassment that Percy Martin's supervisor failed to investigate, not a pattern of deliberate, repeated harassment over time. Martin does not allege that he was subjected to any further harassment after the noose incident, despite defendants' alleged failure to investigate. Nor do plaintiffs allege that the failure to investigate was calculated to inflict emotional distress. Thus, plaintiffs have failed to allege facts sufficient to state a claim for IIED against any defendant. *See Harper v. Boise Paper Holdings, L.L.C.*, 575 F. App'x 261, 265 (5th Cir. 2014) (holding that plaintiff failed to state a claim for IIED when he alleged only a

single incident, rather than a pattern of repeated harassment, and he did not allege that his employer intended to inflict the emotional distress he suffered); *Kell v. Iberville Bank*, 352 F. Supp. 3d 650, 663 (E.D. La. 2018) (dismissing plaintiff's claim for IIED because "the facts alleged do not permit an inference of a pattern of abuse—which Louisiana courts require a plaintiff to prove in a workplace intentional infliction of emotional distress claim").

### 5. *Negligent infliction of emotional distress*

Finally, plaintiffs claim negligent infliction of emotional distress. To the extent that Martin is an employee of Global or American Midstream, this claim is barred by the Louisiana Workers' Compensation Act (LWCA). The LWCA provides the exclusive remedy for personal injuries caused by an employer's or coworker's negligence when those injuries arise out of and in the course of employment. La. R.S. 23:1031, 1032; *see also Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 408 n.1 (5th Cir. 2017). In most instances, Louisiana courts have found that this includes claims for negligent infliction of emotional distress. *See Tumbs v. Wemco, Inc.*, 714 So. 2d 761, 764-65 (La. App. 4 Cir. 1998). Louisiana's First Circuit has recognized an exception to this principle when an employer "knowingly, intentionally and deliberately require[s] the performance of duties, which because of circumstances known to the employer, exposes the employee to the imminent danger of mental

17

breakdown." *Richardson v. Home Depot USA*, 808 So. 2d 544, 550 (La. App. 1 Cir. 2001) (quoting *Samson v. S. Bell T. & T. Co.*, 205 So. 2d 496, 502-03 (La. App. 1 Cir. 1967). But Martin does not allege a circumstance known to defendants that would trigger this exception to the general bar against NIED claims in the employment context. Because Martin's alleged injuries arise out of and in the course of his employment and are not within the exception articulated in *Richardson*, his claim for negligent infliction of emotional distress against his employer is barred. This bar extends to Linda Martin as well, because LWCA's exclusive remedy provision includes claims by the employee's spouse. La. R.S. 23:1032; *Vallery v. S. Baptist Hosp.*, 630 So. 2d 861, 864 (La. App. 4 Cir. 1993) (wife bringing a claim against her husband's employer that arose out of his workplace injury was barred by the LWCA).

Even if plaintiffs' claims are not barred by the LWCA, the facts alleged in the complaint do not give rise to a claim for NIED. As an initial matter, Linda Martin cannot recover on an NIED claim because this claim does not extend to fear over the safety of others. *Dumas v. Angus Chem. Co.*, 728 So. 2d 441, 449 (La. App. 2 Cir. 1999).

As to Percy Martin, he has failed to show the type of "especial likelihood of genuine and serious mental distress, arising from the special circumstances" that Louisiana courts require in order to recover emotional

distress damages for negligence in the absence of physical injury. *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1096 (La. 1990). Louisiana courts have allowed recovery on NIED claims only in extremely limited circumstances. *See* 12 La. Civ. L. Treatise, Tort Law § 28:3 (2d ed.) (providing the following list of recoverable circumstances: "(1) the negligent transmission of a message by a telegraph company, especially one announcing death; (2) mishandling of corpses; (3) failure to install, maintain, or repair consumer products; (4) failure to take photographs or develop film; (5) the negligent damage to one's property while the plaintiff was present and saw their property destroyed; (6) where the plaintiff was actually in great fear for his personal safety"). Courts have interpreted these restrictions to limit NIED claims to cases where the defendant's conduct was extreme and outrageous absent other special circumstances. *Covington v. Howard*, 146 So. 3d 933, 940 (La. App. 2 Cir. 2014); *Kell*, 352 F. Supp. 3d at 664 ("Louisiana courts applying the special circumstances exception recognized in *Moresi* have found that recovery for an NIED claim is limited to those cases where the defendant's conduct was extreme and outrageous.").

The Court has already determined that defendants' alleged actions do not qualify as extreme and outrageous in evaluating plaintiffs' IIED claim. Percy Martin's fear of possible harm after the noose incident due to

19

defendants' failure to investigate is not a special circumstance in which recovery for NIED is appropriate. *Cf. Bonnette v. Conoco, Inc.*, 837 So. 2d 1219, 1235-36 (La. 2003) (holding that plaintiffs' fear of future harm from asbestos exposure was too speculative for NIED recovery); *see also Givs v. City of Eunice*, 512 F. Supp. 2d 522, 548 (W.D. La. 2007), (holding that a workplace harassment case "d[id] not involve any of the circumstances or fall within any category recognized under Louisiana law as having an especial likelihood of genuine and serious mental distress") *aff'd*, 268 F. App'x 305 (5th Cir. 2008). Martin has therefore failed to state a claim for NIED.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED. Its motion to dismiss for failure to state a claim is GRANTED. Plaintiffs' claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __15th__ day of May, 2019.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE